680 F.2d 243
 110 L.R.R.M. (BNA) 2887, 220 U.S.App.D.C. 207
 Donald J. DEVINE, Director, Office of Personnel Management, Petitioner,
v.
Barnett M. GOODSTEIN, Arbitrator, American Federation of
Government Employees, National Immigration and
Naturalization Service Council, and
Norman Fisher, Respondents.
 No. 81-1230.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 23, 1982.
Decided June 4, 1982.
 
 Petition for Review of a Decision of an Arbitrator
 Susan Sleater, Atty., Dept. of Justice, Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, and William Kanter, Atty., Dept. of Justice, Washington, D. C., were on the brief, for petitioner.
 Mark D. Roth, Washington, D. C., with whom James R. Rosa, Washington, D. C., was on the brief, for respondent American Federation of Government Employees.
 Christopher Sanger, Washington, D. C., entered an appearance for respondent Barnett M. Goodstein.
 Before WRIGHT and WALD, Circuit Judges, and BONSAL,* Senior District Judge.
 Opinion for the court PER CURIAM.
 
 PER CURIAM:
 
 1
 The Director of the Office of Personnel Management (OPM) petitions this court for review of an award by Arbitrator Barnett Goodstein. The issue presented is whether the Fifth Amendment excuses a federal employee from giving a report of his official conduct to his supervisors. Because the arbitrator erred in his application of constitutional law, we reverse his award as to the charge of employee insubordination.
 
 I. BACKGROUND
 
 2
 On December 28, 1979 a British citizen attempted to enter the United States from Mexico at a border checkpoint in El Paso, Texas. Norman Fisher, an immigration inspector, detained the visitor, writing in his detention report that the British citizen "was not employed" and "claims he free lances."[1] Mr. Fisher "required the alien to post a MS/D bond as a requirement of permit."[2] The British citizen withdrew his request for admission and left the checkpoint. He then wrote a letter of complaint about the manner in which he was treated.[3]
 
 
 3
 In an effort to respond to the letter, the Immigration and Naturalization Service (Service) sent a copy of the complaint to Mr. Fisher and asked him to write a complete report about the incident.[4] Mr. Fisher responded that before making such a report he wanted to know "all my rights."[5] By this he meant that "he wanted something in writing from the Service to the effect that it would not use his written report against him as the basis of disciplinary action."[6] The Service answered that he knew his rights[7] and ordered him to write a complete report. After a subsequent exchange of memoranda and the employee's continued refusal to write a report, the Service instituted an adverse personnel action against Mr. Fisher charging him with insubordination. The Service eventually suspended him for 15 days.[8]
 
 
 4
 Mr. Fisher chose to appeal the suspension to an arbitrator rather than to the Merit Systems Protection Board under an option created by the Civil Service Reform Act of 1978.[9] The arbitrator reversed the suspension, holding that the Service could not order a report without first giving complete immunity because "under the Constitution of the United States, no citizen is required to testify against himself * * *."[10] OPM intervened and sought reconsideration of the decision.[11] Upon reconsideration the arbitrator held that both the self-incrimination and the double jeopardy clauses of the Fifth Amendment protected Mr. Fisher's actions and also that equal protection principles extended the same protection to citizens not charged with criminal violations.[12]
 
 
 5
 OPM then brought this petition for review. In order to "assure conformity between the decisions of arbitrators with those of the Merit Systems Protection Board"[13] involving adverse personnel actions, the Civil Service Reform Act provides for judicial review of an arbitrator's award "in the same manner and under the same conditions as if the matter had been decided by the Board."[14] See Devine v. Goodstein, 669 F.2d 736, 737 & n. 1 (D.C.Cir.1981). Exercise of our jurisdiction, which is discretionary,[15] is appropriate in this case.[16]
 
 II. APPLICATION OF CONSTITUTIONAL PRINCIPLES
 
 6
 A. The Self-Incrimination Clause[17] and Employee Questioning
 
 
 7
 "(P)ublic employees are entitled, like all other persons, to the benefit of the Constitution, including the privilege against self-incrimination." Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of City of New York, 392 U.S. 280, 284-285, 88 S.Ct. 1917, 1919-20, 20 L.Ed.2d 1089 (1968). Thus testimony elicited from an employee at an administrative hearing under a threat of discharge cannot be used against him in a criminal prosecution. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Conversely, the state cannot discharge an employee who refuses to sign a waiver of immunity. Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). Nor can an employee be discharged for refusing to testify at an administrative hearing when the state threatens use of the testimony in criminal proceedings. Uniformed Sanitation Men, supra. At the same time, if an employee is informed that his responses and their fruits cannot be employed against him in a criminal case, the state may insist that the employee answer questions directed specifically and narrowly at the performance of his job or else suffer loss of employment. See Lefkowitz v. Turley, 414 U.S. 70, 84, 94 S.Ct. 316, 325, 38 L.Ed.2d 274 (1973); Gardner v. Broderick, supra, 392 U.S. at 284, 88 S.Ct. at 1919; Kalkines v. United States, 473 F.2d 1391, 1393 (Ct.Cl.1973); Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of City of New York, 426 F.2d 619, 627 (2d Cir. 1970).
 
 
 8
 The privilege against self-incrimination as elaborated above can be asserted "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory * * *." Kastigar v. United States, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). However, it only protects against "any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Id. at 445, 92 S.Ct. at 1656 (emphasis added). Otherwise, the privilege cannot be invoked.
 
 
 9
 In this case there is no evidence that Mr. Fisher believed his written report would form the basis of a criminal prosecution. The employee testified at the arbitration proceeding only that he feared civil disciplinary action.[18] Nor would fear of criminal prosecution have been reasonable under the circumstances of this case. The arbitrator thought a written report "could" "conceivably" have been used to link the employee with "a possible crime-the violation of (the British citizen's) Civil Rights * * *."[19] This speculation has little support. The relevant statute prohibits willful deprivation of any constitutional or statutory right of "any inhabitant of any State, Territory, or District * * *."[20] The alien's complaint of offensive and uncooperative behavior[21] hardly appears to rise to the level of an illegal deprivation, nor does it appear that the British citizen was an inhabitant of any state.[22]
 
 
 10
 Respondent seeks to raise the specter of criminal prosecution by citing two other prosecutions against Service employees based on supposedly "analogous" alien complaints. Brief for respondent at 16. However, the facts alleged in those indictments differ starkly from the alien's complaint in this case. United States v. Clark, Criminal No. 81-20015-01 (W.D.Ark.), involves charges of systematic assault with dangerous weapons on Cuban refugees detained at Fort Chaffee. Similarly, United States v. Hopkins, Criminal No. EP-81-CR-189 (W.D.Tex.), concerns allegations of repeated assaults against an alien in detention.
 
 
 11
 Thus, under the facts of this case, the employee did not believe and could not have reasonably believed that his written report could be used in a criminal prosecution.[23] Instead, an obvious motive lay behind the Service's request for a report: the government wished to respond to the British citizen's complaint. The arbitrator therefore clearly erred when he invoked the self-incrimination clause to excuse Mr. Fisher's refusal to write a report.
 
 
 12
 B. The Arbitrator's Reliance on the Double Jeopardy Clause and Equal Protection Principles
 
 
 13
 The remaining constitutional underpinnings of the arbitrator's award need not detain us for long. The protections of the double jeopardy clause apply to proceedings that are " 'essentially criminal,' " Breed v. Jones, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (quoting Helvering v. Mitchell, 303 U.S. 391, 398, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938)), not to the type of administrative investigation involved in this case. In any event, the clause has little relevance when no prior proceeding of any kind has occurred and when no threat of criminal jeopardy exists.
 
 
 14
 In addition, equal protection principles cannot extend either the self-incrimination clause or the double jeopardy clause to mere disciplinary matters. The self-incrimination clause by its very terms deals with criminal matters. While the double jeopardy clause has long been extended to situations beyond those involving "jeopardy of life and limb," it has always been confined to essentially criminal proceedings. The Constitution itself establishes limits to protections afforded by its provisions. The arbitrator's analysis clearly exceeded those limits.
 
 III. CONCLUSION
 
 15
 Therefore, the arbitrator's award regarding the insubordination charge is reversed and the matter is remanded to the Immigration and Naturalization Service for imposition of an appropriate sanction.[24]
 
 
 16
 So ordered.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation pursuant to 28 U.S.C. § 294(d) (1976)
 
 
 [1]
 Opinion & Award of the Arbitrator (Op.) at 6, Joint Appendix (JA) 8
 
 
 [2]
 Id
 
 
 [3]
 A copy of the letter appears in the record at JA 59-60
 
 
 [4]
 Exhibit (Exh.) A-X-4, JA 66
 
 
 [5]
 Exh. A-X-5, JA 67 (emphasis in original)
 
 
 [6]
 Op. at 7, JA 9. The Service had previously disciplined an employee for conduct reflected in a written report. Id
 
 
 [7]
 The Civil Service Reform Act of 1978 gives employees the right to union representation at any examination by an agency representative in connection with an investigation if the employee believes the examination may result in disciplinary action. 5 U.S.C. § 7114(a)(2)(B) (Supp.IV 1980). Employees receive an annual notice of this right. Id. § 7114(a)(3). See Exh. A-X-8 and Exh. A-X-9, JA 57-58
 
 
 [8]
 Mr. Fisher was also charged with leaving his duty station contrary to instructions. His suspension was based on both infractions. In reversing the suspension the arbitrator found that health concerns warranted Mr. Fisher's actions and that the Service's instructions were invalid under the collective bargaining agreement. Op. at 11-14, JA 13-16. The arbitrator's resolution of this second charge is not at issue before the court. See brief for petitioner at 8
 
 
 [9]
 5 U.S.C. § 7121(e)(1) (Supp.IV 1980)
 
 
 [10]
 Op. at 8, JA 10-11
 
 
 [11]
 See JA 113
 
 
 [12]
 Opinion & Award on Reconsideration (Op. II) at 2-3, JA 19-20
 
 
 [13]
 S.Rep.No. 95-969, 95th Cong., 2d Sess. 111 (1978)
 
 
 [14]
 5 U.S.C. § 7121(f) (Supp.IV 1980)
 
 
 [15]
 See id. § 7703(d)
 
 
 [16]
 We agree with the determination of the Director of OPM that the arbitrator erred in interpreting the law and that the arbitrator's decision will have a substantial impact on civil service law. See generally 5 U.S.C. § 7703(d) (Supp.IV 1980). We note that this is apparently the first case in which OPM has petitioned this court for review of an adverse personnel action decision of either the Board or an arbitrator. See brief for petitioner at 5
 
 
 [17]
 "(N)or shall (any person) be compelled in any criminal case to be a witness against himself * * *." U.S.Const.Amend. V
 
 
 [18]
 Op. at 7, JA 9
 
 
 [19]
 Op. II at 3, JA 20
 
 
 [20]
 18 U.S.C. § 242 (1976)
 
 
 [21]
 See JA 60
 
 
 [22]
 See Screws v. United States, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495 (1945)
 
 
 [23]
 If Mr. Fisher had reasonably feared criminal prosecution, the situation would have been substantially different. In order to compel a written report, the government would have to have guaranteed that his answers could not be used against him in a criminal case. See Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of City of New York, 426 F.2d 619, 621 (2d Cir. 1970). Thus Mr. Fisher would have been entitled to a recorded guarantee of criminal use immunity. Even if no such guarantee were provided, full use immunity would have attached in later criminal proceedings as a matter of law. Womer v. Hampton, 496 F.2d 99, 108 (5th Cir. 1974). See Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)
 
 
 [24]
 We note that the original suspension was based on two infractions, only one of which now has support