**Karl PARKER, Jr., Plaintiff,**

v.

**The BALTIMORE AND OHIO RAILROAD COMPANY, et al., Defendants. (3 Cases)**

**Civ. A. Nos. 79–0158, 80–2626 and 81–0266.**

United States District Court, District of Columbia.

Jan. 14, 1983.

Robert L. Cohn, Cohn & Rabin, Washington, D.C., for plaintiff.

Morgan D. Hodgson, Neil A. Kaplan, Peter L. Wellington, Steptoe & Johnson, Washington, D.C., for defendants.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Baltimore & Ohio Railroad Company ("B & O"), one of two defendants in these consolidated "reverse discrimination" cases, has moved to compel production of several tape recordings that the plaintiff allegedly made of telephone conversations between himself and other B & O employees. The plaintiff, a citizen of Maryland, points to a Maryland statute that makes it a felony electronically to record a telephone conversation without the consent of all the parties. See Md.Cts. and Jud.Proc.Code Ann. § 10–402. He asserts that compelled disclosure of any tapes made after July 1, 1977, the effective date of the Maryland Wiretapping and Electronic Surveillance Act,[1] would violate his Fifth Amendment privilege against self-incrimination. The dispute raises two issues: are the tapes protected by the Fifth Amendment, and if so, what steps ought to be taken to protect defendant from possible prejudice at trial resulting from their inaccessibility?

The Fifth Amendment's privilege against self-incrimination provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." That this is a civil action between two parties does not detract from the force of the privilege. It "can be asserted 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory,'" to protect "against 'any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *Devine v. Goodstein,* 680 F.2d 243, 246 (D.C.Cir. 1982) (*per curiam*), quoting *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972) (emphasis omitted).

The privilege extends only to disclosures that would be both compelled and testimonial, however. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). According to *Fisher,* the act of producing a record can be "testimonial" in that the producer impliedly makes three "statements": he affirms the existence of the thing sought, his possession of it, and his belief that the thing produced is that which he or she was called upon to produce (authentication). *Fisher, supra,* 425 U.S. at 410–14, 96 S.Ct. at 1580–82. Plaintiff's resistance shows that there is compulsion, and the applicability of the privilege thus turns on whether there is anything incriminating about his being compelled to make any of these three statements. In *Fisher,* it was a "foregone conclusion" that the taxpayers involved had accounting records, and there was nothing illegal about their having obtained the services of accountants. 425 U.S. at 411–12, 96 S.Ct. at 1581. It was only the *content* of the documents that was incriminating. Similarly, in *United States v. Challman,* 520 F.Supp. 64, 66–67 (S.D.Ind. 1981), no privilege adhered to the production of a videotape cassette of a music program because there was nothing incriminating about admitting the existence of the videotape. Only the owners' tax computations regarding the music program were allegedly illegal.

By contrast, the act of recording conversations without all parties' consent is a crime in Maryland. See *Adams v. State,* 43 Md.App. 528, 406 A.2d 637, 642 (1977). Thus the tapes that plaintiff seeks to protect in this case are incriminating in and of themselves by virtue of plaintiff's alleged act of having tape-recorded the phone calls. The content of the conversations is largely irrelevant.[2] Compelled production of the tapes would oblige plaintiff to state impliedly that such illegal tape recordings ex-

---

1. A law in effect before July 1, 1977 made it a misdemeanor to use an electronic device. See Md.Ann.Code, Art. 27, § 125A (1957) (repealed effective July 1, 1977).

2. It is possible, as plaintiff points out, that the content of the conversations could include statements that might be useful in a prosecu-

tion under the statute, *e.g.,* reference to a date or place and the absence of a question eliciting the other party's consent to having the conversations recorded. For purposes of a *Fisher* analysis, however, this may largely be irrelevant.

ist and that the materials turned over are those recordings. In the absence of compelled production, the existence of the tapes is not a "foregone conclusion" adding little to already known information. *Fisher, supra,* 425 U.S. at 411, 96 S.Ct. at 1581. *Cf. Matter of Grand Jury Subpoena Duces Tecum,* 466 F.Supp. 325 (S.D.N.Y.1979) (Fifth Amendment privilege upheld where production of record would be confession that record existed and crime was committed).

Defendant maintains that production of the tapes would not communicate any incriminating information because defense counsel has framed the document requests in such a way as not to call for such information.[3] This argument is unrealistic. If plaintiff's voice is not evident on the tapes then why are they relevant to this action? Even if Parker does not identify himself, voice comparisons could easily identify Parker as the one constant voice reflected on each tape.[4]

Defendant also claims that no authentication would be involved, stating that the maker of a tape recording is not required to authenticate it. The one case cited by defendant for this proposition, *Stubbs v. United States,* 428 F.2d 885 (2d Cir.1970), is readily distinguishable. There the recording had been taken at a public proceeding and there were other sources which were able to authenticate the tape to the trial court's satisfaction. In this case, where only two individuals were parties to each conversation and only one of them privy to the equipment making the tape, the likelihood is strong that Parker would be needed to authenticate the tapes and that defendant would resort to an argument that his production was tantamount to authentication.

Finally, defendant belittles the likelihood of prosecution under the Maryland statute. Defendant, of course, cannot speak for Maryland law enforcement officials and bind them to a pledge of nonprosecution. *Cf. Maness v. Meyers,* 419 U.S. 449, 462 n. 10, 95 S.Ct. 584, 593 n. 10, 42 L.Ed.2d 574 (although city attorney asserted he would not prosecute, he could not bind state or county law enforcement officials). The Maryland statute is not an archaic remnant of another era but a law recently enacted. Accordingly, the Court concludes that plaintiff's fear of self-incrimination is reasonable and that the Fifth Amendment privilege against compelled self-incrimination applies to the tapes.

■ The determination that the privilege applies only partially settles the instant motion, for the person asserting the privilege is the individual who commenced the underlying civil actions. There is thus the potential for unfairness in "permit[ting] a party to withhold information relevant to allegations which it has itself made." *Grinnell v. Hackett,* 20 F.R.Serv.2d 668, 670 (D.R.I. 1974), *appeal dismissed,* 519 F.2d 595 (1st Cir.1975).

The Court of Appeals for this Circuit has rejected the position that a civil plaintiff automatically waives his Fifth Amendment privilege against self-incrimination merely by bringing a lawsuit. *Black Panther Party v. Smith,* 661 F.2d 1243, 1271 (D.C.Cir. 1981), *judgment vacated,* —— U.S. ——, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982).[5] Nor has plaintiff used the Fifth Amendment "as a pretext for the wholesale refusal to answer questions," *Mertsching v. United States,* 547 F.Supp. 124, 128 (D.Col.1982), or violated any court orders in the process

---

**3.** What defendant terms "the most specific document request in these cases" requested plaintiff to produce "each tape recording that contains a conversation concerning any fact or facts relating to plaintiff's claims and/or defendant Baltimore & Ohio Railroad's defenses in these cases."

**4.** *Fisher* held that a party's authorship of a document does not automatically extend the privilege to that document, but it is a significant factor in analyzing the communicative as-

pects of production and was the question expressly left open by *Fisher.* 425 U.S. at 414, 96 S.Ct. at 1582.

**5.** In view of the Supreme Court's vacating of the judgment the case may hold little precedential weight. Nevertheless, the opinion is indicative of the position of the Court of Appeals and may be independently persuasive as a discrete piece of legal reasoning.

of asserting the privilege. *Id.* This is a case, rather, where the Court is able to take precautionary measures to "prevent plaintiff ... from turning the Fifth Amendment into an offensive tactic at trial by surprising the [defendant] with testimony concerning matters as to which the privilege was claimed during discovery." *Backos v. United States,* 82 F.R.D. 743, 745 (E.D.Mich.1979).

The tapes allegedly contain conversations between plaintiff and B & O employees who are prospective witnesses for the defendant. Defendant B & O apparently has two concerns about the tapes' existence: first, that plaintiff may testify inaccurately about what various B & O employees said to him (or may omit statements favorable to the defense); second, that plaintiff will testify accurately and because of his ability to refresh his recollection of the conversations by listening to the tapes before testifying will come across as a more credible witness than the other parties to the conversation who must rely solely on their memories. The defendant proposes sanctions ranging from dismissal of certain of plaintiff's claims to exclusion of any evidence relating to these conversations. The Court rejects these suggestions in favor of the following course.

At trial, neither the plaintiff nor the defendant may make any reference, direct or indirect, to the existence of tape recordings that have not been turned over to the defendant. Thus, any contradictory testimony pertaining to conversations that were taped will be resolved in the usual way through evaluation of the participants' direct and cross examinations in the context of all the evidence.

As to defendants' concern that plaintiff will use the tapes to refresh his memory, the Court has considered and rejected a requirement that plaintiff submit the tapes to the protective custody of the Court. Requiring such production would itself burden

plaintiff's exercise of his privilege against self-incrimination. Instead, the Court will rely on the good faith and professional ethics of plaintiff's counsel in fashioning its remedy. Within a day of the filing of this memorandum order, the plaintiff shall surrender to his attorney, Robert L. Cohn, any and all tapes of conversations with B & O employees that have not been disclosed to defendant. Plaintiff shall also relinquish any notes or transcriptions made from the tapes.[6] Neither plaintiff, his attorney, nor any individual connected with either person may listen to the tapes or read the notes or transcriptions from the date of the filing of this memorandum order until such time as the Court lifts this requirement. Plaintiff's counsel shall file a statement of compliance with the Court's order within three days of the date of filing of the order. Should it appear at any time that plaintiff or his attorney has violated this part of the Court's order, the Court will not hesitate to hold either or both in contempt, dismiss the actions, or both.

■ Finally, plaintiff has moved for an order compelling the defendant B & O to answer Requests for Admissions Nos. 39–44. The requested admissions relate to a tape recording that plaintiff released to B & O during discovery, in contrast to the tapes alluded to in the discussion above. This recording was made before July 1, 1977, and relays a conversation between Parker and a B & O employee, H. Thomas Kirk. B & O objects to the requests for admission in that they ask B & O to confirm excerpts from the tape, a "tape recording that was made in violation of Maryland law ... and is inadmissible." The law cited, Md.Ann.Code Art. 27, § 125A (1957), is the precursor to the statute that became effective July 1, 1977.[7] The earlier statute made it a misdemeanor to use an electronic device whereas the later statute makes it a felony to record a conversation without all parties' consent. Since plaintiff voluntarily disclosed the tape

---

**6.** Any notes made contemporaneous with the conversation are not subject to this requirement. As to them, plaintiff and defendant stand on equal ground.

**7.** See note 1 *supra.*

made while the first law was in effect, he waived any privilege against self-incrimination he might have asserted.

Whether or not plaintiff violated the public policy of Maryland in making the tape, no law mandates that its contents be inadmissible as evidence in this Court. The federal wiretapping law does not exclude the tape, because Parker was a party to the conversation. See 18 U.S.C. § 2511(2)(d). Maryland courts also would not exclude a tape recording where the law violated was the pre-July 1977 statute and consent to the taping was given by at least one party to the conversation. See *Smith v. State of Maryland*, 283 Md. 156, 389 A.2d 858, 860–61 (1978), *aff'd*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Accordingly, defendant may not object to the requests on the ground that they would be inadmissible evidence or would not lead to admissible evidence.

For the foregoing reasons, it is this 14th day of January, 1983,

ORDERED That defendant B & O's motion to compel production be and it is hereby denied, and it is further

ORDERED That plaintiff's motion to compel requests to admissions be and it is hereby granted, and it is further

ORDERED That within one day of the filing of this order, the plaintiff shall surrender to his attorney any and all tapes of conversations with B & O employees that have not been disclosed to defendant. Plaintiff shall also relinquish any notes or transcriptions made from the tapes. Neither plaintiff, his attorney, nor any individual connected with either person may listen to the tapes or read the notes of transcriptions from the date of the filing of this order until such time as the Court lifts this requirement, and it is further

ORDERED That plaintiff's counsel shall file a statement of compliance with the Court's order within three days of the date of filing of the order, and it is further

ORDERED That defendant's request for attorney's fees incurred in connection with its motion to compel be and it is hereby denied.