**Col. L. Fletcher PROUTY, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

**Civ. A. No. 82–2277.**

United States District Court, District of Columbia.

Oct. 6, 1983.

**202**

James H. Lesar, Fensterwald & Associates, Arlington, Va., for plaintiff.

Roderick C. Dennehy, Jr., Alan J. Sobol, National Railroad Passenger Corp., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's motion for partial summary judgment or dismissal, plaintiff's opposition thereto, defendant's reply, the declaration of Alex Langston submitted by plaintiff on October 5, 1983, and the entire record herein. For the reasons stated below, the Court grants defendant's motion for partial summary judgment with regard to plaintiff's claims for breach of contract, for negligence, and under the District of Columbia Human Rights Act, D.C.Code §§ 1–2501 *et seq.*, and grants defendant's motion to dismiss plaintiff's request for compensatory and punitive damages under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

## FINDINGS OF FACT [1]

In February 1972, plaintiff Col. L. Fletcher Prouty was hired by defendant National Railroad Passenger Corporation ("Amtrak")

**1.** These findings are based in large part on defendant's Statement of Material Facts as to which There is No Genuine Issue. None of these material facts have been controverted by plaintiff. Local Rule 1–9(h) states in pertinent part:

> In determining a motion for summary judgment, the court may assume that the facts as

as Manager, Government and Military Marketing. The parties never executed a document specifying that plaintiff would be employed by Amtrak until he retired at the age of sixty-five.

In August 1975, plaintiff held the position of Special Assistant to the Vice President for Public Affairs. Plaintiff did not sign a written contract for this position. Deposition of L. Fletcher Prouty at 171 ("Prouty Deposition").

As of August 1975, plaintiff believed that defendant Amtrak had promised him a promotion to Assistant Vice President. *Id.* at 175. However, during the summer of 1975, plaintiff did not sign any documents reflecting his entitlement to a salary or position at the Assistant Vice President level. *Id.* at 175–76. The parties did not execute any documents setting forth the terms of plaintiff's alleged promotion to Assistant Vice President. Moreover, plaintiff knew in 1975 that he could not use the title of Assistant Vice President on his business cards. *Id.* at 195. He also knew that he had not received a salary increase in connection with this alleged August 1975 promotion. *Id.* at 188–91.

Plaintiff was not prohibited from reviewing his personnel and salary records through May 1976 and was aware of this fact. *Id.* at 252–54. Plaintiff also knew that he could examine his personnel and salary records in 1978. *Id.* at 297–98.

In 1975, plaintiff became aware that Amtrak was working with Hay & Associates on an employee salary and compensation plan. *Id.* at 256. Plaintiff never made a formal inquiry into his rating under the Hay system in 1976 and 1977, although he was aware of a corporate policy in effect at that time making this information available. *Id.* at 288.

> claimed by the moving party in his statement of material facts are admitted to exist except as and to the extent that such facts are controverted in a statement filed in opposition to the motion.

Rule 1–9(h) of the United States District Court for the District of Columbia.

In 1978, plaintiff knew that he still had not received the salary increase he expected from his alleged promotion in August 1975. *Id.* at 307.

Not later than the last few days of July or the first week of August 1979, plaintiff discovered that his Hay point rating was "0675." *Id.* at 268, 323, 325–26.

From August 1975 until August 1979, plaintiff never sought to review his personnel files, his records in the public affairs department, or his records in the budget department. *Id.* at 252–53, 292–93, 297–98.

Plaintiff did not write any letters or memoranda of complaint to Amtrak's Personnel Department about his failure to receive his expected promotion in August 1975, his failure to receive a salary increase in conjunction with this promotion, or about the fact that he had not received the official title of Assistant Vice President, until August 14, 1979. *Id.* at 255, 297, 335–36.

On May 28, 1981, plaintiff was discharged from Amtrak. He has not worked for defendant since that time.

On August 12, 1982, he filed the instant complaint.

## CONCLUSIONS OF LAW

### A. *Plaintiff's Contract Claims*

Plaintiff's breach of contract claim is premised on plaintiff's allegations "that during the period that the contract was in force, primarily 1975 and beyond, he was treated unfairly and not in accordance with the contractual agreement he had with Amtrak, in the areas of compensation, evaluation, and promotion." Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment or Dismissal at 15 ("Plaintiff's Opposition"). Defendant asserts that no actionable contract exists in this case.

Amtrak contends that plaintiff's contract claims are barred by the District of Columbia Statute of Frauds, D.C.Code § 28–3502 (1981). According to defendant, plaintiff never identified any writing signed by defendant dealing with the length of plaintiff's employment or promising him employ-

ment until he reached the age of sixty-five. In addition, plaintiff never identified any document offering him a position as Assistant Vice President. Plaintiff argues, however, that the contract was evidenced by a written instrument, *i.e.,* a Form 35 Personnel and Payroll Notice, which Amtrak prepared and executed on February 25, 1972. Memorandum Exhibit C attached to Defendant's Motion for Partial Summary Judgment or Dismissal. Form 35 includes the following information: (1) plaintiff's name, address, social security number, and other identifying information; (2) the date of hire and the date available to report to work; (3) the position title and annual rate of pay; and (4) plaintiff's education and military background.

The District of Columbia Statute of Frauds provides in pertinent part:

> An action may not be brought ... to charge a person ... upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

D.C.Code § 28–3502 (1981). The alleged contract at issue in this case was not to be performed within one year from the making thereof. Therefore, in order to bring an action pursuant to this contract, "the agreement upon which the action is brought, or a memorandum or note thereof" would have to be in writing. *Id.*

Plaintiff cites *Farrow v. Cahill,* 663 F.2d 201 (D.C.Cir.1980) for the proposition that although a contract contemplating long-term employment does require a writing, the writing does not have to be the contract itself but can be another writing confirming the oral agreement. In *Farrow,* two Washington attorneys appealed the district court's decision to enforce a written agreement that they had reached with an Oakland, California law firm, their former employer, to buy that firm's Washington branch office. *Id.* at 202. A detailed

"Memorandum Agreement" was drawn up which provided that the two Washington attorneys would take over the Washington practice and would pay the law firm a percentage of their gross receipts for a term of years. *Id.* at 203 n. 3, 204. The United States Court of Appeals for the District of Columbia found that the "Memorandum Agreement" satisfied the Statute of Frauds. *Id.* at 210. The court emphasized that the statute does not require the contract itself to be in writing as long as the existence of a contract on the terms contained in the written document is independently proved. *Id.*

In the instant case, plaintiff argues that Form 35 "clearly stated all of the basic terms of the agreement he and Harold Graham [the department head at Amtrak] had previously reached, including the duties Prouty was to perform, the date of his employ, and his rate of pay." Plaintiff's Opposition at 11. The Court finds this form insufficient to satisfy the Statute of Frauds. Plaintiff alleges that he was not treated in accordance with the contractual agreement he had with Amtrak, primarily during the period 1975–1981, in the areas of compensation, evaluation, and promotion. *Id.* at 15. Form 35 was prepared and executed on February 25, 1972. It is silent on the issues of promotion and evaluation and, in the area of compensation, only indicates plaintiff's annual salary. Moreover, the form does not indicate the existence of a long-term contract but at most, the existence of an employment contract terminable at will. It is simply the type of form that new employees typically are required to fill out when they accept a position with a new company. Because plaintiff's breach of contract claim arises out of Amtrak's alleged failure to promote him in August 1975 and beyond, Form 35 cannot be used to satisfy the Statute of Frauds. The Court also notes that plaintiff has not indicated that any documents were executed by the parties regarding any promotion in August 1975 or any other time.

Moreover, the Court must dismiss plaintiff's breach of contract claim as it relates to plaintiff's allegations that he was promised employment with Amtrak until he was eligible for retirement at the age of sixty-five. Prouty Deposition at 33, 34, 42, 46. Employment contracts are deemed terminable at will unless they are for a specific term. Plaintiff can point to no document executed by the parties indicating that his employment contract was for a specific term. Thus, either party had the ability to terminate the relationship at any time.[2] *Sullivan v. Heritage Foundation*, 399 A.2d 856, 860 (D.C.1979). In *Sullivan*, two former employees of the Heritage Foundation brought suit against the corporation and its president for, *inter alia,* breach of employment contract. They contended that they were beneficiaries of annual contracts running from one Board of Trustees meeting to the next. These contracts allegedly were breached as a result of the employees' dismissal without cause. The trial court granted summary judgment in favor of the corporation. The District of Columbia Court of Appeals indicated in pertinent part:

> Unless otherwise agreed ... mutual promises to employ and to serve at the agreed rate create obligations terminable at will by either party....

>       *    *    *    *    *    *

> The fact that appellants were employed at a salary rate measured on an annual basis does not, of itself, manifest agreement that the employment was to continue for that unit of time.... The modern rule is that in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of employment, is not a contract for one year but is terminable at will by either party....

>       *    *    *    *    *    *

**2.** The parties briefed this issue earlier. *See* Defendant's Motion to Dismiss at 27 (filed November 24, 1982); Plaintiff's Opposition at 27–29 (filed December 14, 1982).

Either party was privileged, therefore, to terminate the employment relationship at any time....

*Id.* at 860–61 (case citations and footnotes omitted). Plaintiff has not apprised the Court of any facts or circumstances which would indicate that the employment agreement was for a specific term.

In *Uriarte v. Perez-Molina,* 434 F.Supp. 76 (D.D.C.1977), the court also was faced with an alleged breach of an employment contract. The complaint alleged that plaintiff was offered and accepted employment with defendant as a research analyst at a salary of $15,000 per year. After working for defendant for several months, he was terminated, allegedly "without just cause." *Id.* at 78. The only issue before the court was "whether his employment contract was breached by the defendants or could as a matter of law be terminated by either party at will." *Id.* at 79. The court found that:

> ... the bilateral contract here in question was terminable at will and therefore cannot support a cause of action brought by plaintiff for its breach. It is clear that plaintiff was hired at a fixed salary rate for an indefinite period of time. Plaintiff's pleadings do not contest this point, nor has he suggested by way of affidavit or exhibit that any contractual understanding to the contrary was ever achieved....

*Id.* (footnotes omitted).

Based on these cases, the Court finds that the parties in the instant case had an employment agreement terminable at will. Accordingly, the Court must dismiss any portion of plaintiff's breach of contract claim pertaining to Amtrak's alleged promise to plaintiff that he would be employed at Amtrak until retirement.

█ Finally, the Court finds that even if other impediments to maintaining this breach of contract claim did not exist, plaintiff's contract action would be barred by the statute of limitations. The statute of limitations for contract actions in the District of Columbia is three years. D.C.Code § 12–301(7) (1981). The statute begins to run from the time of breach. *Fowler v. A*

*& A Co.,* 262 A.2d 344, 347 (D.C.1970). Plaintiff knew in late 1975 that he could not have "Assistant Vice President" inscribed on his business cards and that his salary had not increased as a result of the alleged promotion. Prouty Deposition at 188, 194–95. Therefore, plaintiff's claim that his contract was not breached until he was terminated in May 1981 is without merit. Plaintiff's primary allegation is that Amtrak breached its agreement to promote plaintiff in August 1975. According to the testimony of plaintiff at his deposition, he was on notice of problems almost immediately after receiving this alleged promotion. He was aware that he had not received a salary increase and could not use the title "Assistant Vice President." Yet, he failed to take any corrective action. Although he talked to some people in management, he failed to examine his personnel and salary records or to put anything in writing until August 14, 1979. The Court cannot accept plaintiff's excuse for inaction, *i.e.,* that the Hay system was being put into effect and he thought this would clear up his problems.

Plaintiff did not file this suit until August 12, 1982. Clearly, he has not met the applicable three-year statute of limitations period.

█ The Court also notes that plaintiff may not rely on the doctrine of equitable estoppel as a defense to the three-year statute of limitations period. To rely on the doctrine of equitable estoppel, the party invoking it must "have relied upon the acts or representations of his adversaries and because of such reliance, have refrained from instituting legal action within the limitation period." *Alley v. Dodge Hotel,* 551 F.2d 442, 446 (D.C.Cir.), *cert. denied,* 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed. 277 (1977). In the instant case, plaintiff did not rely on representations of defendant. He continually discussed with Mr. Edwin Edel, Amtrak's Vice President of Public Affairs, the fact that he did not have an Assistant Vice President title and that he had not received the salary increase he expected. Prouty Deposition at 188, 194–95, 300–01, 310. He knew that he had not received any of the

benefits of promotion, yet failed to take any positive action to obtain these benefits. Therefore, plaintiff may not rely on the doctrine of equitable estoppel.

Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's breach of contract claims.

### B. Plaintiff's Negligence Claims

Plaintiff contends that the failure of Amtrak to adequately maintain his employment records and to have those records at its office in Washington, D.C., constitutes an independent tort for negligence. According to plaintiff, Amtrak was negligent in not "clarifying" his position level after the alleged promotion in 1975, in assigning him an erroneous Hay rating, in failing to pay him a higher salary, and in certain other actions concerning his Hay rating and salary. Amended Complaint at ¶ 53.

Defendant contends, however, that plaintiff has not alleged an independent cause of action for negligence because plaintiff makes the same factual allegations in support of his breach of contract claim. Defendant relies on *Towers Tenant Association v. Towers Ltd. Partnership,* 563 F.Supp. 566 (D.D.C.1983), wherein the court stated in pertinent part:

> The omission to perform a contractual obligation does not ordinarily create a cause of action in tort as between the contracting parties. . . . Rather, an action for breach of contract is the recognized and appropriate avenue of relief. . . . Moreover, "[t]he mere negligent breach of a contract, *absent a duty or obligation imposed by law independent of that arising out of the contract itself,* is not enough to sustain an action in tort."

*Id.* at 570, *quoting Heckrotte v. Riddle,* 224 Md. 591, 168 A.2d 879, 882 (1961) (emphasis added by court in *Towers Tenant Association* ) (case citations omitted). *See also Blake Construction Co. v. C.J. Coakley Co.,* 431 A.2d 569 (D.C.1981).

■ Plaintiff has not alleged any violation of a duty imposed by statute or law. Instead, plaintiff argues that the Court should recognize a tort for "negligent maintenance of employment records" and cites *Quinones v. United States,* 492 F.2d 1269 (3rd Cir.1974). *Quinones* was brought under the Federal Tort Claims Act. The court allowed plaintiff's claims based on alleged negligent maintenance of employment records to go forward. It indicated that federal administrative regulations require that each agency maintain personnel records of its employees. *Id.* at 1276–77. Therefore, the United States had a specific duty to maintain employment records.

In the instant case, however, plaintiff has not indicated that Amtrak was charged with any specific duty to maintain employment records, imposed by statute or law, that would give rise to a negligence action.

■ Moreover, even if plaintiff could maintain a negligence action under these circumstances, this claim would be barred by the statute of limitations. The statute of limitations period for negligence claims is three years. D.C.Code § 12–301(8) (1981). The limitations period begins to run when the plaintiff suffers injury. *Weisberg v. Williams, Connolly & Califano,* 390 A.2d 992 (D.C.1978). Because plaintiff's negligence claims depend on the same factual allegations as his contract claims, the limitations period also is the same. Therefore, the negligence actions also are barred by the statute of limitations.

The Court reiterates that plaintiff was or should have been put on notice of any alleged negligence of defendant in late 1975. Plaintiff alleges that he received a promotion in August 1975 to Assistant Vice President. Yet, the record indicates that he knew in late 1975 that his salary had not increased as a result of this promotion and that he could not put the title "Assistant Vice President" on his business cards. Prouty Deposition at 188, 194–95. Despite this knowledge, Prouty failed to examine his personnel records or to put his concerns in writing until August 14, 1979, or to file an action for negligence until August 12, 1982. Because plaintiff knew in 1975 that he had not received the salary or title com-

mensurate with this promotion, the statute of limitations period began running at that time. Therefore, plaintiff's claim for negligence was time-barred when he filed the complaint in August 1982.

Plaintiff argues that this action involves a continuing tort; therefore, the cause of action does not accrue until the tortious activity has ceased. The Court disagrees. All of plaintiff's allegations arise from the alleged wrong in 1975, *i.e.,* Amtrak's failure to promote him to Assistant Vice President. "The mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would obliterate the rule." *Fitzgerald v. Seamans,* 553 F.2d 220, 230 (D.D.C.1977). The Court finds that plaintiff's allegations do not constitute a continuing tort because all of plaintiff's allegations stem from Amtrak's alleged failure to promote him in 1975. Therefore, the statute of limitations period was not tolled.

For the reasons stated in Part A, *supra,* the Court also finds that plaintiff may not rely on the doctrine of equitable estoppel as a defense to the three-year statute of limitations.

Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's negligence claims.

## C. Plaintiff's Claims Under the District of Columbia Human Rights Act

In counts one and two of the first amended complaint, plaintiff alleges violations of the District of Columbia Human Rights Act, D.C.Code § 1–2512 (1981) ("D.C. Human Rights Act" or "Act"). Defendant contends that summary judgment must be entered in its favor because plaintiff's claims under the D.C. Human Rights Act are untimely.

The applicable statute of limitations period for claims brought under the D.C. Human Rights Act is one year. D.C.Code § 1–2544 (1981). Section 2544 states in pertinent part:

Any person or organization, whether or not an aggrieved party, may file with the Office a complaint of a violation of the provisions of this chapter, including a complaint of general discrimination, unrelated to a specific person or instance.... Any complaint under this chapter shall be filed with the Office within 1 year of the occurrence of the unlawful discriminatory practice, or the discovery thereof, except as may be modified in accordance with § 1–2543.

D.C.Code § 1–2544(a) (1981). As the District of Columbia Court of Appeals indicated in *Davis v. Potomac Electric Power Co.,* 449 A.2d 278, 280 (D.C.1982), the Act is silent on whether the one-year period applies to civil actions brought under the Act. The Court in *Davis* ruled that the one-year limitation period applies to actions at law commenced under the D.C. Human Rights Act. *Id.* at 281.

In the instant case, plaintiff was discharged on May 28, 1981. He did not file the initial complaint until August 12, 1982. Because he failed to file a complaint alleging violations under the D.C. Human Rights Act within one year of his discharge, his claim is time-barred.

Plaintiff's argument that *Davis* should not be controlling because the Daily Washington Law Reporter did not report the decision until September 8, 1982, three weeks after plaintiff filed this suit, is without merit. *Davis* was decided on July 16, 1982, almost four weeks before plaintiff filed his complaint.

Plaintiff's reliance on *Parker v. Baltimore and Ohio Railroad Co.,* 555 F.Supp. 1177 (D.D.C.1983) is misplaced. In *Parker,* defendant asserted that plaintiff's claims under 42 U.S.C. § 1981 were barred by the one-year statute of limitations applicable to actions brought under the D.C. Human Rights Act. The court noted, however, that when plaintiff filed his first complaint in 1979, federal courts in the District of Columbia applied a three-year statute of limitations to section 1981 actions. *Id.* at 1187–88. The court found that:

[T]he confusion surrounding the applicable statute of limitations in 1979, when

plaintiff filed his first complaint, justifies prospective application of the one-year statute of limitations....

*Id.* at 1188. No such confusion surrounds the applicable statute of limitations in the instant case. When plaintiff filed his first complaint, *Davis* had already been decided. Thus, application of the one-year statute of limitations is prospective.

Accordingly, the Court grants defendant's motion for summary judgment with regard to plaintiff's claims under the D.C. Human Rights Act.

### D. Compensatory and Punitive Damages Under the ADEA

Plaintiff seeks compensatory damages of $1,000,000.00 and punitive damages of $2,000,000.00 on all allegations of his complaint. Defendant has filed a motion to dismiss plaintiff's request for compensatory and punitive damages under the ADEA.

The following remedies are available under the Act:

Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purpose of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing wages or unpaid overtime compensation under this section....

29 U.S.C. § 626.

The overwhelming weight of legal authority indicates that compensatory and punitive damages are not available under the ADEA. *Hill v. Spiegel, Inc.,* 708 F.2d 233, 235 (6th Cir.1983) (damages for pain and suffering not recoverable); *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 688 (7th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982) (punitive dam-

ages and damages for pain and suffering not available); *Naton v. Bank of California,* 649 F.2d 691, 698–99 (9th Cir.1981) (no damages for pain and suffering); *Slatin v. Stanford Research Institute,* 590 F.2d 1292, 1296 (4th Cir.1979) (damages for pain and suffering not allowed); *Vazquez v. Eastern Air Lines, Inc.,* 579 F.2d 107, 109 (1st Cir. 1978) (compensatory damages not available); *Dean v. American Security Insurance Co.,* 559 F.2d 1036, 1038–39 (5th Cir.1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978) (general damages and punitive damages not available); *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 839–42 (3d Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978) (no damages for pain and suffering or emotional distress). *See also Carter v. Marshall,* 457 F.Supp. 38, 42 (D.D.C.1977) (exemplary, punitive, and compensatory damages not recoverable).

Accordingly, the Court finds that compensatory and punitive damages are not available under the ADEA.

### CONCLUSION

In accordance with the above, the Court grants defendant's motion for partial summary judgment or dismissal. An appropriate order is attached.

### ORDER

Upon consideration of defendant's motion for partial summary judgment or dismissal, plaintiff's opposition thereto, defendant's reply, the declaration of Alex Langston submitted by plaintiff on October 5, 1983, and the entire record herein, it is by the Court this 6th day of October 1983,

ORDERED that defendant's motion for partial summary judgment or dismissal be and hereby is granted; it is further

ORDERED that judgment on plaintiff's claim for breach of contract (Count V) be and hereby is entered in favor of defendant and the claim for breach of contract is hereby dismissed; it is further

ORDERED that judgment on plaintiff's claim for negligence (Count VI) be and hereby is entered in favor of defendant and the claim for negligence is hereby dismissed; it is further

ORDERED that judgment on plaintiff's claims under the District of Columbia Human Rights Act, D.C.Code §§ 1–2501 *et seq.* (Counts I and II) be and hereby is entered in favor of defendant and the claims are hereby dismissed; and it is further

ORDERED that plaintiff's claim for compensatory and punitive damages under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (Counts I and II) be and hereby is dismissed.