Dorothy G. BENDER, et al., Plaintiffs,

v.

**ROCKY MOUNTAIN DRILLING ASSOCIATES, et al.**

**Civ. A. No. 86–0566.**

United States District Court, District of Columbia.

Nov. 12, 1986.

Joel R. Kaswell, Barry H. Gottfried, and Clarence B. Nixon, III, Washington, D.C., for plaintiffs.

Charles F.C. Ruff, Arvid E. Roach II, Richard G. Slattery, Covington & Burling, and Robert Gold, Washington, D.C., for defendants.

## OPINION

JUNE L. GREEN, District Judge.

Plaintiffs are a group of investors who purchased limited partnership interests in Rocky Mountain Drilling Associates ("Rocky Mountain") in December 1980. Subsequently, the value of plaintiffs' interests declined precipitously and they commenced this action for damages or rescission. Plaintiffs allege that defendants participated in a conspiracy to defraud them, and in so doing violated federal securities and racketeering statutes, as well as various provisions of state law. Upon motion of the defendants,[1] the Court grants them summary judgment.[2]

---

1. Two motions to dismiss are before the Court. Defendants Friedman & Shaftan, P.C., and Marcia C. Shaftan, Executrix of the Estate of Robert P. Shaftan (collectively, "Shaftan defendants"), have joined in filing one motion to dismiss. Defendants Rocky Mountain Drilling Associates ("Rocky Mountain"), Oscar Strongin ("Strongin"), Mitchell Petroleum Technology Corp. ("Mitchell Petroleum"), and Herman Finesod ("Finesod") (collectively, "Rocky Mountain de-

fendants") have joined in filing a separate motion to dismiss. Both motions rely on essentially the same legal theories.

2. As the Court is not excluding matters presented that are outside the pleading, defendants' motions to dismiss will be treated as summary judgment motions. Federal Rules of Civil Procedure, Rule 12(b); C. Wright & A. Miller, Federal Practice and Procedure § 1366.

## I. *Background*

Plaintiffs are Dorothy G. Bender, Stanley B. Bender, Howard M. Bender, Stanley Prill, and Jason Shrinsky. On December 26, 1980, plaintiffs purchased limited partnership interests in Rocky Mountain. Rocky Mountain was formed to engage in developmental and exploratory drilling for oil and gas in Ohio and Utah, and to sell, lease, sublicense or otherwise utilize a new, undeveloped drilling device known as the "Terra-Drill."

Rocky Mountain had entered into previously an agreement with Mitchell Petroleum, an exclusive licensee of the Terra-Drill, allowing Rocky Mountain to obtain a five-year sublicense for use of the Terra-Drill in parts of Texas and on Rocky Mountain's property in Utah. Defendant Finesod was the owner of Mitchell Petroleum. The Terra-Drill had been licensed to Mitchell Petroleum by its developer, Tround International, Inc. ("Tround").

Prior to investing in Rocky Mountain, plaintiffs acknowledge that they received and read an Offering Memorandum providing information about Rocky Mountain and indicating the risky nature of the venture. Complaint, ¶¶ 31, 46. The Offering Memorandum consisted of 55 pages of text and 12 exhibits, one of which was a tax opinion letter prepared by Friedman & Shaftan, P.C., a New York law firm (the "Law Firm"). Robert P. Shaftan, who died on January 6, 1986, was at the time a member of the Law Firm.

The Offering Memorandum contained detailed information concerning Rocky Mountain and the transactions underlying its formation and its acquisition of the Terra-Drill sublicense. The Offering Memorandum emphasized clearly the highly speculative nature of the venture. Its cover stated prominently that "THESE SECURITIES INVOLVE A HIGH DEGREE OF RISK." Attachment to Shaftan Defendants' Exhibit A at i. The next page stressed that "INVESTMENT IN THE LIMITED PARTNERSHIP INTERESTS OFFERED HEREBY INVOLVES A HIGH DEGREE OF RISK, INCLUDING MATERIAL FEDERAL INCOME TAX RISKS." *Id.* at ii.

With regard to the exploitation of the Terra-Drill sublicense, prospective investors were warned that the Terra-Drill was "currently in the development stage"; that "[a] prototype of the Terra-Drill ha[d] not yet been developed"; that "[n]o assurance [could] be given that Tround [would] be successful in developing the Terra-Drill, or in reaching Production Capabilities"; and that numerous risk factors made the potential of profit from the device very uncertain. *Id.* at 1, 10, 13, 22–25, 2N.

In a section entitled "tax risks," the Offering Memorandum warned of the possibility that the Internal Revenue Service ("IRS") would disallow any deduction by Rocky Mountain of the payments it made to Mitchell for the Terra-Drill sublicense, and of the adverse tax consequences this would have for investors. *Id.* at 15. Further, the Offering Memorandum stated prominently in its summary section, "THERE IS A SUBSTANTIAL RISK THAT THE [IRS] WILL SEEK TO SET ASIDE ALL OR A PORTION OF THE DEDUCTIONS CLAIMED BY THE PARTNERS AND/OR WILL CHALLENGE THE TIMING OF SUCH DEDUCTIONS." *Id.* at 5; *see also id.* at 41–50.

The tax opinion accompanying the Offering Memorandum highlighted similarly the possibility that the IRS would disallow Rocky Mountain's deduction of the sublicense fee paid to Mitchell, *id.* at 12B–25B, and noted that the opinion's conclusion that the sublicense fee would be legally deductible was "conditioned" upon "[t]he amounts and terms of the sublicense and royalty fees payable by the partnership [being] commercially reasonable." *Id.* at 2B.

The Offering Memorandum emphasized that the Law Firm was not rendering an opinion as to the reasonableness of the sublicense fee. *Id.* at 5. The Law Firm indicated clearly that it was relying on the factual representations by Rocky Mountain's general partners. *Id.* at 1B, 2B, 23B, 24B, 26B.

The Offering Memorandum also stated that potential investors were not to rely on the tax opinion or on any of the contents of the Offering Memorandum as constituting legal, tax, or investment advice to them. Rather, they were instructed to consult their own counsel for such advice. *Id.* at ii, 41, 50.

The Offering Memorandum required expressly that each investor either be sophisticated in financial and business matters, so as to be able to evaluate the merits and risks of the investment independently, or employ an advisor of sufficient sophistication that the investor and the advisor together could perform jointly such an evaluation. *Id.* at 26–28. Each investor was required to sign a subscription agreement, in which he warranted expressly, *inter alia*, that he (1) had "received current information concerning the Partnership (including its General Partners) and underst[ood] the nature of the risks involved in his investment (including the tax consequences thereof)"; (2) was "able to bear the economic risks of his investment in the Partnership and realize[d] that he [might] lose his entire investment in the Partnership"; (3) "either ha[d] received professional guidance with respect to his investment in the Partnership or [was] experienced in investment and business matters"; and (4) "recognize[d] that the Partnership [was] newly organized and ha[d] no history of operations or earnings and [was] a speculative venture." *Id.* at 16A, 17A; *see also id.* at 2F, 3F.

The Offering Memorandum continued to disclose numerous additional facts, including, but not limited to, potential conflicts of interest; the sums to be paid for the Terra-Drill master license and sublicense; the individuals behind the various companies and any cross-relationships; and features of the Rocky Mountain partnership. In short, the fifty-five page Offering Memorandum, attached exhibits, partnership agreement, and tax opinion appears to have been a full disclosure of a highly speculative investment scheme.

Plaintiffs, in possession of all this information, chose to purchase limited partnership interests in Rocky Mountain. For the units they purchased, the five plaintiffs made a total cash outlay, on the purchase date and within approximately one year thereafter, of $975,000, plus notes payable in 1993 totaling $2,925,000. Complaint, ¶¶ 4–8. Plaintiffs purchased the investments from defendant Robert O'Neal, a sales agent for Rocky Mountain, conducting allegedly at least part of these transactions in the District of Columbia. Complaint, ¶¶ 14, 70.

Plaintiffs learned in January 1985 that the IRS had proposed a disallowance of Rocky Mountain's deduction of its sublicense fee payments to Mitchell Petroleum on the ground that those payments were not commercially reasonable. This disallowance will, if upheld, apparently prevent plaintiffs from utilizing their investment in Rocky Mountain as a "tax shelter." Complaint, ¶¶ 38–39.

Plaintiffs commenced this action on February 28, 1986. They seek to rescind their purchases of the limited partnership interests in Rocky Mountain and damages for their losses brought upon them allegedly by defendants' fraudulent conduct.

## II. *Conclusions of Law*

### A. *Jurisdiction*

Plaintiffs claim that defendants participated in a pattern of allegedly fraudulent conduct arising out of the sale to them of interests in Rocky Mountain, thereby violating, among other statutes, section 10(b). Complaint, ¶¶ 1, 4, 18–31, 37–39, 41–47. They have further alleged that many of the acts charged in the complaint, including the actual sales of which they complain, took place in the District of Columbia. Complaint, ¶¶ 3, 5–9, 31. Because plaintiffs have alleged a violation of section 10(b), at least one part of which occurred in the District of Columbia, this Court has personal jurisdiction over the defendants. 15 U.S.C. § 78aa; *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1314–16 (9th Cir.1985); *Mariash v. Morrill*, 496 F.2d 1138, 1142–43 (2d Cir.1974);

*Como v. Commerce Oil Co., Inc.,* 607 F.Supp. 335, 342 (S.D.N.Y.1985); *see also* D.C.Code §§ 13–421, 13–423(a)(1) (District of Columbia long-arm statute).

## B. *Plaintiffs' Securities and RICO Claims Are Time-Barred*

Plaintiffs alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"), Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) ("Section 17(a)"),[3] and Section 1964 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. These claims are time-barred, and accordingly, they must be dismissed.

Section 10(b) does not prescribe the statute of limitations applicable to private actions brought under it. Where "Congress has created a federal right but has not prescribed a limitation period for enforcement, federal courts will borrow the period of limitation prescribed by the state where the court sits." *Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 413 (D.C.Cir.1977) ("*Forrestal Village*"). In *Forrestal Village,* the court held that "the local blue sky law limitation" applies to fraud claims under the federal securities laws. *Id.* Thus, the two-year statute of limitations for claims brought under the District of Columbia's blue sky law applies to plaintiffs' remaining federal securities claim. D.C. Code § 2–2613(e).

The federal RICO statute likewise contains no statute of limitations for civil actions. Nonetheless, the statute of limitations governing RICO causes of action is the three-year statute of limitations which applies to "the recovery of damages for an injury to real or personal property." D.C. Code § 12–301(3). *Middle States Knowlton Corp. v. ESIC Capital, Inc.,* Nos. 82–1911, 82–1913, 82–1926, and 82–1941, slip op. at 7 (D.D.C. Oct. 16, 1985).

■ These limitation periods run from the date plaintiffs "discover[ed], or should have discovered through the exercise of reasonable diligence, the fraudulent activity in question." *Cross v. Price Waterhouse & Co.,* [1982–1983 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,153 at 95,568 (D.D.C.1983). Defendants argue that limitations period began running on December 26, 1980, when plaintiffs admit that they purchased the limited partnership interests. Complaint, ¶¶ 5–9. Plaintiffs contend that the relevant statutes of limitations were tolled until June 1985, when they received an Engineering and Valuation Report prepared by the IRS. Complaint, ¶ 37. Plaintiffs claim that this IRS report tipped them off as to the nature and existence of the alleged fraudulent conduct which they allegedly could not have discovered otherwise. *See Hobson v. Wilson,* 737 F.2d 1, 34–35 (D.C.Cir.1984) (in cases involving "self-concealing wrong," the statute of limitations is tolled).

■ Plaintiffs' securities fraud and RICO claims are premised on allegations that defendants misrepresented or failed to disclose certain facts, principally: (1) the fees paid for the master license and the sublicense, and the profit to be realized by Mitchell Petroleum from the large differential between the two; (2) limitations on the rights of the Terra-Drill that Mitchell Petroleum obtained from Tround under the master license; (3) the extent of Finesod's and Mitchell Petroleum's role in the subject transactions; and (4) the possibility that other limited partnerships would be created. *See, e.g.,* Complaint, ¶¶ 25, 26. In truth, a plain reading of the Offering Memorandum, the accompanying tax opinion and exhibits reveal that these facts and many more were disclosed, repeatedly in many instances. *Supra* at 332–333. Since plaintiffs acknowledge receiving and reading this disclosure material, in addition to attesting to their sophisticated investor status, prior to their investment in Rocky

---

**3.** There is no private right of action under section 17(a). *Hammerman v. Peacock,* 607 F.Supp 911, 915 (D.D.C.1985); *Deane v. Thomson McKinnon Securities, Inc.,* 586 F.Supp. 44 (D.D.

C.1984), *aff'd,* 762 F.2d 137 (D.C.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 232, 88 L.Ed.2d 231 (1986). Accordingly, this claim is dismissed on its face.

Mountain on December 26, 1980, they were on notice as to any supposed fraud as of that date. Accordingly, the limitation periods for bringing federal securities and RICO claims ran from that date and have expired.

▬ Nor do plaintiffs' conclusory allegations of fraudulent concealment provide them any relief from these time bars. "[T]he doctrine of fraudulent concealment has no applicability at all if the plaintiff was on notice of the wrong complained of." *Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143, 1150 (D.D.C.1986) (citing *Hobson v. Wilson*, 737 F.2d at 35). Moreover, the limitation period is not tolled if a plaintiff has a reasonable basis to suspect a wrong, and fails to exercise due diligence to investigate the matter. *Id.; General Builders Supply Co. v. River Hill Coal*, 796 F.2d 8, 13 (1st Cir.1986).

Here, the essential "wrong complained of" is that plaintiffs were not informed that the price Mitchell Petroleum paid Rocky Mountain for the Terra-Drill sublicense was significantly higher than the price Rocky Mountain had recently paid to acquire a master license for the device. Complaint, ¶ 23. The Offering Memorandum, however, explained that Mitchell Petroleum had agreed to pay $1.6 million for the Terra-Drill master license and that Rocky Mountain would be obligated to pay Mitchell Petroleum up to $84 million for the sublicense it would receive. Offering Memorandum at 5, 9, 10, 22, 24, 29, 30, 46. Further, the Offering Memorandum disclosed that Mitchell Petroleum had acquired the license only shortly before. *Id.* at 2N.

▬ Plaintiffs also argue that the statutes of limitations were tolled until June 1985 because the Law Firm failed "to correct or withdraw the Tax Opinion when they knew or should have known that the assumptions contained [in the Tax Opinion] were no longer valid." Complaint, ¶ 37. Despite the fact that plaintiffs nowhere specify when the Law Firm supposedly

learned of this information,[4] they have cited no authority for the notion that the Law Firm was arguably under a continuing duty to withdraw the tax opinion if they learned anything contrary to the factual assumptions on which they relied. Plaintiffs' Memorandum in Opposition to Motions to Dismiss at 43.

The sole authority plaintiffs submit in support of this idea is a decision in a Securities and Exchange Commission ("SEC") disciplinary proceeding, not a civil fraud case. That decision dealt with an attorney's failure to (1) reflect changed facts in new opinions he issued concerning whether particular securities could be traded without registration, and (2) consider, in issuing those new opinions, whether he should also revise existing opinions on file at the SEC and the American Stock Exchange, on which people were currently relying in making sales of the securities without registration, concerning the need to register the securities. *Morris Mac Schwebel*, 40 S.E.C. 347 (1960). The Court is unable to discern the rationale whereby this case establishes any duty to withdraw a past opinion that does not purport to offer present advice to be relied upon in present transactions.

C. *Plaintiffs' Fraud Allegations Are Not Pled With the Necessary Particularity*

▬ Furthermore, plaintiffs have not made any allegation of fraud by the defendants with the particularity mandated by Federal Rules of Civil Procedure, Rule 9(b) ("Rule 9(b)"). Rule 9(b) requires that "in all averments of fraud ... the circumstances constituting the fraud ... shall be stated with particularity." Rule 9(b) applies as well to plaintiffs' assertions of fraudulent concealment. *See, e.g., Caribe Trailer System, Inc. v. Puerto Rico Maritime Shipping Authority*, 1978-2 Trade Cas. (CCH) ¶ 63, 133 at 74,996 (D.D.C.1978). Rule 9(b) is intended to prevent a plaintiff from pursuing a lawsuit founded on unsupported allegations of fraud. It bars a

---

**4.** The sufficiency of plaintiffs' complaint will be addressed *infra* at 335–336.

plaintiff from "alleging fraud by hindsight," *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978), and from bringing a groundless "strike suit" in the hope of forcing a defendant to settle in order to avoid the cost of discovery. *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *see also United States ex rel. Joseph v. Cannon*, 642 F.2d 1373 1385 n. 103 (D.C.Cir.1981), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982) (need for protection against allegations of fraud is most acute where the potential defendants are professionals with reputations to protect); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 18–19 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984) (when a RICO charge "contains no valid allegations of 'fraud' ... it necessarily must fail.").

■ As a general rule, general allegations based on "information and belief" do not satisfy Rule 9(b). *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). Nonetheless, the Court counts no fewer than thirty-one allegations based on "information and belief" in the complaint, not to mention the twelve "knew or should have known" allegations.

The complaint is replete with conclusory and unsubstantiated allegations of fraud, and it fails to specify which defendant committed what allegedly fraudulent acts. Such fraud pleadings are "patently insufficient under Rule 9(b)." *Equitable Life Assurance Society v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1030 (S.D.N.Y.1985); *see also Satellite Financial Planning Corp. v. First National Bank of Wilmington*, 633 F.Supp. 386, 397 (D.Del.1986); *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 656–57 (N.D.Cal.1980). Finally, a comparison of the Offering Memorandum, which plaintiffs acknowledge receiving and reading before they made their investment (Complaint, ¶¶ 31, 46), refutes thoroughly plaintiffs' allegations of misrepresentation and failure to disclose.

### III.  *Conclusion*

Plaintiffs' remaining federal securities claim is subject to a two-year statute of limitations, and their RICO claim is subject to a three-year statute of limitations. Plaintiffs' claims accrued on December 26, 1980, the date on which they purchased their limited partnership interests, because they had sufficient notice then of the facts they now rely on for their allegations of fraud. The pertinent statutes of limitations therefore began to run on the date of those investments and have long since expired. In the absence of those federal claims, the Court lacks pendent jurisdiction over the state-law and common-law claims, and summary judgment must be granted for defendants. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

■ In addition, the complaint is insufficient because of plaintiffs' utter failure to particularize their allegations of fraud. Rule 9(b) does not permit a plaintiff to rely, as do plaintiffs here, on "information and belief" allegations, wholly conclusory allegations of fraud, or contentions that defendants "knew or should have known" facts that were supposedly misrepresented or not disclosed. Rather, it requires a plaintiff accusing a defendant of fraud to set forth specific facts that will support the accusation. *See Segal v. Gordon*, 467 F.2d at 607–08 ("A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one.").

"On or about January 3, 1985, the [IRS] disallowed [in full] the sublicense fee paid by Rocky Mountain to Tround because the rights acquired had no value. Thereafter, the tax deductions taken by plaintiffs ... were also disallowed in full...." Complaint, ¶ 38. When plaintiffs chose to participate in this venture, its highly speculative nature was made known to them. The fact that their investment has turned out to be unsuccessful will not, without more, give rise to an action for fraud. An order granting summary judgment to defendants

is attached. *See Federal Deposit Ins. Co. v. Lauterbach,* 626 F.2d 1327, 1335 (7th Cir.1980) (summary judgment appropriate in fraud cases where evidence submitted rebuts allegations); *see also Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (Fed.R. Civ.P. 56(c) "mandates the entry of summary judgment, ... upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## ORDER

Upon consideration of defendants' motions to dismiss, plaintiffs' combined opposition thereto, defendants' replies, exhibits and affidavits submitted by the parties, the hearing held in this matter, and for the reasons set forth in the accompanying opinion, it is by the Court this 12th day of November 1986,

ORDERED that defendants' motions to dismiss are converted into motions for summary judgment; it is further

ORDERED that defendants' motions for summary judgment are granted; and it is further

ORDERED that this action is dismissed.