972 F.2d 340
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David HIRSCHLER, II; June A. Saks, Custodian for Michael L.
Saks; Michael L. Saks; Aubrey Eugene Loving, Jr.; John A.
Trinder; Ronald D. Ashby; Jeanne H. Ashby; Susan
Schaffarzick, Plaintiffs-Appellants,
v.
GMD INVESTMENTS LIMITED PARTNERSHIP; GMD Properties II,
Incorporated; Jeffrey A. Greene; Michael J.
Doyle, Defendants-Appellees,
and
Sidney E. MARTIN, III; Reznick Fedder & Silverman;
McColgan & Company, Incorporated, Defendants.
 No. 91-2087.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 6, 1992
Decided: August 7, 1992
 
 ARGUED: Stephen Douglas Sharp, BEIGEL & SANDLER, LTD., Chicago, Illinois, for Appellants. David Bingham Bullington, DAVID & HAGNER, P.C., Washington, D. C., for Appellees.
 ON BRIEF: Herbert Beigel, BEIGEL & SANDLER, LTD., Chicago, Illinois, for Appellants. David R. Kuney, Michael L. Shor, Tammy G. Cohen, James L. Gladstone, DAVID & HAGNER, P.C., Washington, D.C., for Appellees.
 Before WILKINS and HAMILTON, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 This case involves an appeal by the Plaintiffs from the trial court's order granting summary judgment to the Defendants on Plaintiffs' claims of securities and common law fraud and dismissing Plaintiffs' claim for negligent misrepresentation. The trial court found that the statute of limitations had run on the counts of fraud and that Virginia law does not recognize the tort of negligent misrepresentation.[1] Because we agree with the district court's decision, we affirm.[2]
 
 
 2
 This case arose out of the Plaintiffs' investments in a real estate limited partnership which acquired, owned, and operated a 220-unit townhouse/apartment project known as the Poplar Place Apartments located in Memphis, Tennessee. Defendants-the partnership's sponsors-organized, marketed, and managed the partnership. Interests in the partnership were sold in 1985 by the Sponsors through the use of a 390-page Private Placement Memorandum ("PPM"). The trial court found that the Plaintiffs were experienced investors who purchased securities in the partnership at a rate of $110,000.00 per unit.
 
 
 3
 In connection with this purchase, each of the Plaintiffs executed a Subscription Agreement, pursuant to which each acknowledged that "he or she understands the meaning and legal consequences of the foregoing representations [in the PPM]." Plaintiffs each further acknowledged that "[t]o the best of the undersigned's knowledge and belief, the undersigned, by himself or herself (or together with his or her Purchaser Representative(s), if any), has the knowledge and experience in financial and business matters necessary to evaluate the merits and risk involved in the purchase of the [Partnership] Units...."
 
 
 4
 The cover pages of the PPM outlined certain risk factors involved in an investment in the partnership. These factors included the fact that the General Partner and certain others would be subject to various conflicts of interest with respect to the partnership's activities and would be receiving fees and rights from the partnership. The cover pages went on to state that "units are offered only to investors of substantial financial means who can afford to assume such risks and who have no need for liquidity of their investment."
 
 
 5
 In addition to the above-mentioned cover pages, the PPM contained a 17 page Risk Factors section detailing the high-risks involved in this real estate transaction which included unforeseeable increases in operating expenses, changes in economic conditions, and changes in rental supply or demand.
 
 
 6
 By letter dated March 14, 1986, the Sponsors wrote to the Plaintiffs informing them of serious problems with the project. Specifically, they said that there had been a rapid increase in new apartment construction in the area fueled primarily by tax-exempt bond financing and that the property's occupancy rate was only approximately 75%. On December 8, 1986, the Sponsors informed the investors that these problems had continued. The letter stated that an unparalleled change in the tax law had resulted in developers starting new projects at record levels in an effort to lock in the tax benefits of the existing law. In addition, the availability of bond financing provided economic benefits to these new apartments allowing them to charge very competitive rents. This letter explained that it appeared that the partnership would generate taxable losses for the year somewhat in excess of those projected. In March 1987, the Sponsors wrote informing the investors that they would not be able to make the projected cash flow distribution. The Sponsors wrote again in October 1987, November 1987, and April 1988, indicating that the property continued to fare poorly due to market conditions.
 
 
 7
 The Plaintiffs received a final letter dated September 26, 1989, advising them that the Sponsors expected the property to be lost to foreclosure. This induced several of the Plaintiffs to hire counsel in the fall of 1989 to investigate the partnership. Allegedly, as a result of the information gleaned through this investigation, Plaintiffs began this litigation.
 
 
 8
 Plaintiffs alleged in their complaint that the Sponsors materially misrepresented aspects of the partnership. The Plaintiffs asserted, as one example, that the "[s]ponsors substantially overvalued the Property, structured the Partnership with excessive and economically unsound debt, and knowingly or recklessly misrepresented the Partnership's ability to be and become profitable." They also asserted that the purpose of the partnership was in fact to provide enormous fees and profits to the Sponsors.
 
 
 9
 In assessing the securities fraud claim, the district court applied the two-year statute of limitations applicable to cases brought under Virginia's blue sky laws, Va. Code Ann. § 13.1-522 (Michie 1991). In so doing, the court acted in accordance with our decision in Gurley v. Documation Inc., 674 F.2d 253 (4th Cir. 1982), and the general practice of applying state limitations periods ins 10(b) cases. See Louis Loss, Fundamentals of Securities Regulations, 992-93 (2d ed. 1988).
 
 
 10
 Subsequent to Gurley and the district court's decision, however, the Supreme Court issued an opinion holding that a suit pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78aa, must be commenced within one year of the activities constituting the violation and in any event no later than three years after such violation. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, U.S., 111 S.Ct. 2773 (1991). The Supreme Court specifically ruled that the three-year limitations period would not be subject to the doctrine of equitable tolling. Id. at 2782.
 
 
 11
 Although the Supreme Court applied the decision in Lampf retroactively to the parties before the Court, the Court did not address the decision's retroactive effect upon other pending litigation. While the Court's decision handed down the same day in James B. Beam Distilling Co. v. Georgia, U.S., 111 S. Ct. 2439 (1991), indicated that the new limitations period adopted in Lampf would apply retroactively, Congress eliminated any possible retroactive effect of the Lampf decision in legislation enacted on November 27, 1991, and signed into law on December 19, 1991. See Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. No. 102-242, § 476, 105 Stat. 2236, 2387 (1991) (to be codified as § 27a of the Securities Exchange Act of 1934, 15 U.S.C. 78aa). Consequently, the Lampf decision has no effect upon the case presently before the court.
 
 
 12
 Plaintiffs argue that the trial court erred when it found that the statute of limitations had run on its securities and common law fraud claims and granted the Defendants summary judgment on those counts. A court of appeals should review a trial court's grant of summary judgment de novo, using the same standard that governs the trial court. Helm v. Western Maryland Ry., 838 F.2d 729, 734 (4th Cir. 1988). Consequently, this court should affirm the granting of summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).
 
 
 13
 Although, as discussed above, state law supplied the limitations period for Plaintiffs' federal 10(b) action, federal law dictates when this period begins to run. See Newman v. Prior, 518 F.2d 97, 100 (4th Cir. 1975). This period commences when the plaintiff is on inquiry notice of the fraud. Id. "Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." Kennedy v. Josephthal & Co., 814 F.2d 798, 802 (1st Cir. 1987). Once a party is on inquiry notice, he must act with due diligence to discover the alleged fraud. Davis v. A.G. Edwards & Sons, Inc., 823 F.2d 105, 107 (5th Cir. 1987). The limitations period is not tolled if the plaintiff has a reasonable basis to suspect wrong and fails to exercise due diligence to investigate the matter. Landy v. Mitchell Petroleum Technology Corp., 734 F. Supp. 608, 617 (S.D.N.Y. 1990); Bender v. Rocky Mountain Drilling Associates, 648 F. Supp. 330, 335 (D.D.C. 1986).
 
 
 14
 Plaintiffs contend that fraudulent concealment on the part of the Defendants tolled the statute. However, fraudulent concealment does not determine whether a plaintiff has sufficient notice to begin the running of the limitations period. Rather, fraudulent concealment is only a factor in assessing whether the plaintiff, after receiving such notice, should have discovered the alleged fraud through the exercise of due diligence. Jensen v. Snellings, 841 F.2d 600, 607 (5th Cir. 1988).
 
 
 15
 The district court found upon its review of the pleadings and exhibits that "a reasonable factfinder could only find that plaintiffs were on inquiry notice of the alleged fraud well before May 4, 1988. Furthermore, plaintiffs have failed to carry their burden of pleading facts to support a finding of either fraudulent concealment or due diligence."
 
 
 16
 The trial court found that the Plaintiffs were placed on notice by the letters they received from the Sponsors indicating the poor health of their investment. The Plaintiffs contend, however, that the letters and even the possibility of foreclosure did not place them on inquiry notice because the Sponsors provided legitimate, believable, business reasons for the failure of the investment.
 
 
 17
 Plaintiffs assert that the investment was bound to fail from the start because the Sponsors improperly funded it and were using it as a tool to make them wealthier at the investors' expense. The Plaintiffs state in their complaint that the Sponsors structured the partnership with excessive and unsound debt and misrepresented its ability to become profitable. In paragraph 16 of the complaint, the Plaintiffs outline specific "unsound" obligations incurred by the partnership including certain debts owed by the partnership and certain fees paid to the Sponsors. However, these items were all fully and fairly disclosed in the PPM. Thus, Plaintiffs were on notice of these allegedly unsound obligations from the time of their investment and should have investigated them prior to the purchase of their shares.
 
 
 18
 The specific allegations of misrepresentations and omissions are detailed in paragraph 19 of the complaint where the Plaintiffs contend that the Sponsors' projections with regard to the partnership's ability to raise its rents and achieve a certain occupancy rate were unfounded. The detailed letters from the Sponsors chronicling the partnership's inability to meet the projected occupancy and profit rates placed the investors on inquiry notice of any such misrepresentations. Since the Plaintiffs failed to demonstrate their due diligence in investigating the alleged wrongdoing or fraudulent concealment on the part of the Sponsors in actively thwarting the Plaintiffs' investigation, the Plaintiffs' suit is time barred by the applicable two year statute of limitations.
 
 
 19
 A two year statute of limitations also applies to Plaintiffs' state-law action for common law fraud. Va. Code Ann. § 8.01-243 (Michie 1991). Virginia law regarding when the limitations period begins to run is similar to that governing federal actions. See Va. Code Ann. § 8.01-249 (Michie 1991) (cause of action for fraud accrues when fraud is discovered or by the exercise of due diligence reasonably should have been discovered). Accordingly, the district court correctly found that the Plaintiffs' common law fraud claim was time barred.
 
 
 20
 Finally, while Plaintiffs have presented no authority demonstrating that Virginia has recognized the viability of a claim for negligent misrepresentation, they nevertheless argue that the district court erred in refusing to consider whether a Virginia court would recognize this tort.
 
 
 21
 In cases involving private litigants raising important unsettled questions of state law which involve-apart from normal precedential effect-only the rights of these private parties, abstention is deemed to be inappropriate, even if it is felt that the federal decision may conflict with later state decisions on the same issue. See Wohl v. Keene, 476 F.2d 171, 174 (4th Cir. 1973). Unsettled questions of state law are frequently decided by federal courts. E.g., Martin v. State Farm Mut. Auto. Ins. Co., 375 F.2d 720, 722 (4th Cir. 1967); Stephens v. State Farm Mut. Auto. Ins. Co., 508 F.2d 1363 (5th Cir. 1975), cited in Charles A. Wright, Law of Federal Courts, § 52 (West 1981). If the tort of negligent representation were to be recognized in the state of Virginia, it is only reasonable that the same two-year statute of limitations applicable to other negligent actions and common law fraud would apply with equal strength. Va. Code Ann. § 8.01-243 (Michie 1991). As noted, the Sponsors' common law fraud action is barred by a two-year statute of limitations. A negligent misrepresentation claim would appear to be barred for the same reasons. Therefore, it was harmless error for the district court to have refused to consider whether Virginia would recognize the tort of negligent misrepresentation, and consequently, remand is not required.
 
 AFFIRMED
 
 
 [1]
 The Plaintiffs do not appeal the district court order dismissing their claim for breach of fiduciary duty
 
 
 [2]
 The Plaintiffs also sued the accounting firm and appraiser involved in the transaction; however, they do not appeal the trial court's ruling dismissing the claims against those defendants